O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14/15

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7266 PSG (PLAx) | Date | January 18, 2011 |
|---|---|---|---|
| Title | Stephanie Wolff v. Hyatt Corporation, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Denying Standard Parking Corporation and Century City Garage Parking, LP's Motion to Dismiss

Pending before the Court is Defendants Standard Parking Corporation and Century City Garage Parking, LP's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court DENIES the motion.

I.      Background

Plaintiff Stephanie Wolff ("Plaintiff") suffers from multiple sclerosis and other ailments impairing her mobility. *See Compl.* ¶ 1. In May of 2010, Plaintiff visited the Hyatt Regency Century Plaza Hotel in Los Angeles, California (the "Hotel"), where she encountered "numerous deficiencies regarding disability access at the hotel and the adjacent parking garage." *Opp'n* 3:6-8; *Compl.* ¶¶ 34-42.

When Plaintiff arrived at the Hotel, she discovered that the valet parking was full, so she drove to and parked in the adjacent parking structure ("parking lot" or "garage"). *See Compl.* ¶ 36. After parking her car, Plaintiff followed the signs for access to the Hotel, which led her to a "pedestrian bridge" and then a walkway toward the Hotel. *Id.* ¶ 38. As she progressed, Plaintiff discovered that her only option to get to the Hotel was to descend two staircases of eleven and thirteen steps, respectively. *Id.* ¶¶ 25, 38. While there were ramps, the ramps led only to dead ends, which apparently were the locations of mobility lifts in the past. *Id.* ¶ 27-28 ("Any lift has long since been torn out and cemented over, however, and defendants have failed to replace it

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14/15**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7266 PSG (PLAx) | Date | January 18, 2011 |
|---|---|---|---|
| Title | Stephanie Wolff v. Hyatt Corporation, *et al*. | | |

with an adequate alternative."). There were no indications that the parking lot's exit was not handicapped accessible. In fact, while "[a]ll the signage in the parking garage indicate[d] that patrons are to access the hotel and its services via a pedestrian bridge located on the ninth floor of the garage . . . the garage contain[ed] no signage regarding disability access, or lack thereof, on the pedestrian bridge or disability access generally." *Id.* ¶ 21.

On September 29, 2010, Plaintiff filed a Complaint in this Court against Hyatt Corporation ("Hyatt"), Next Century Associates, LLC ("Next Century"), Standard Parking Corporation ("Standard"), and Century City Garage Parking, LP ("CCGP") (collectively, "Defendants") alleging federal and state claims premised on the "lack of disabled access" and "inadequate signage" in the garage. *Id.* ¶ 73, 99. Specifically, Plaintiff alleges violations of: (1) the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; (2) California's Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*.; (3) California's Disabled Persons Act, Cal. Civ. Code § 54, *et seq*.; (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; and (5) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. The first three claims are asserted against each Defendant based on the allegation that the Hotel, the garage, the walkways, the entire seven acres on which the Hotel is situated, and the signage displayed in these areas, "are individually and/or jointly owned, operated, leased by or to, developed, maintained, and/or controlled" by all of the Defendants. *See, e.g.*, ¶ 71.

Defendants Standard Parking and CCGP (collectively, the "Parking Lot Defendants") filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that the Parking Lot Defendants do not "own" or "operate" any of the property upon which the alleged violations occurred, and therefore, Plaintiff cannot state a claim against either of them. *See Mot.* 2:6-8 ("Because there are no accessibility barriers on the Parking Lot property, and because Plaintiff does not allege that she had any trouble entering, using, or leaving the Parking Lot, the Parking Lot Defendants' motion to dismiss should be granted."). For the reasons that follow, the Court DENIES the Parking Lot Defendants' motion.

II.     Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14/15**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7266 PSG (PLAx) | Date | January 18, 2011 |
|---|---|---|---|
| Title | Stephanie Wolff v. Hyatt Corporation, *et al*. | | |

survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim to relief. *See id*.

In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id*. at 1950. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc*., 579 F.3d 943, 949 (9th Cir. 2009). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. Despite the liberal pleadings standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id*.

Finally, the Court notes that in ruling on a motion to dismiss, the Court may consider documents outside the pleadings without the proceeding turning into summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In particular, the Court may consider (a) documents that are "properly submitted as part of the complaint,"(b) documents on which plaintiff's complaint necessarily relies and whose authenticity is not contested, and (c) "matters of public record" of which the court may take judicial notice under Rule 201 of the Federal Rules of Evidence. *See id*. (internal quotations omitted).

III. Discussion

Parking Lot Defendants argue that dismissal of claims one, two and three against them is warranted because, as a matter of fact, the Parking Lot Defendants do not "'own' or 'operate' the property" on which the violations in this case allegedly occurred. *See Mot.* 5:10-12. To state a claim under Title III of the Americans with Disabilities Act ("ADA"), a plaintiff must show that (1) she was "discriminated against on the basis of a disability," (2) "in the full and equal enjoyment of the . . . facilities . . . or accommodations of any place of public accommodation," (3) by "any person who owns, leases (or leases to), or operates a place of public

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14/15

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7266 PSG (PLAx) | Date | January 18, 2011 |
|---|---|---|---|
| Title | Stephanie Wolff v. Hyatt Corporation, *et al*. | | |

accommodation." 42 U.S.C. § 12182(a). Parking Lot Defendants' argument rests on the third prong of an ADA Title III violation: the "owns" or "operates" prong. *See Mot.* 5:10-12.[1]

Plaintiff's ADA allegations against the Parking Lot Defendants can be placed into two general categories: (1) Parking Lot Defendants "own, operate, maintain, control, and or/lease" the portions of the area where the violations occurred; and (2) the garage itself is not in compliance with relevant disability laws.

The Parking Lot Defendants correctly point out that a defendant is not liable for an ADA violation unless it, *inter alia*, "owns" or "operates" the property on which the violation allegedly occurred. *See Mot.* 5:11; *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 966 (9th Cir. 2006) (requiring that the Defendant "own," "lease" or "operate" the offending area). To support the argument that the they neither "own" nor "operate" the land where Plaintiff encountered the alleged violations, Parking Lot Defendants point to facts alleged in the Complaint, along with other arguably judicially noticeable facts. Specifically, they point to facts indicating that Next Century owns the Hotel and Hyatt manages it, *see Compl.* ¶ 17, that CCGP owns the garage and Standard Parking manages it, *see id.* ¶ 20, that the stairs Plaintiff encountered after leaving the garage were 275 feet from the entrance/exit to the garage, *see id.* ¶ 25, and that the garage and the Hotel are two distinct properties, owned and operated separately, *see Request for Judicial Notice* ("*RJN*"), Exs. A-H.[2]

First, the Court does not read as much into the offered exhibits as the Parking Lot Defendants do. The Parking Lot Defendants provided eight exhibits with the pending motion, which include a tourist-type, computer-generated map from the Century City Chamber of Commerce's website, and a number of different property records showing the covenants on the relevant land and that the parcels are separately owned. *See RJN*, Exs. A-H. In addition, the Parking Lot Defendants filed an untimely supplemental request for judicial notice ("SRJN"), consisting of a Los Angeles County Assessor's Map of the land on which the garage and Hotel

---

[1] Plaintiff's other claims asserted against the Parking Lot Defendants include similar ownership requirements. *See Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463, 468 (1962) (actionable violations under the Unruh Civil Rights Act must occur in "business establishments," which is broadly defined); *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal. App. 4th 254 (2007) (explaining that the California Disabled Persons Act requires that "either the structure of the public facility, or some policy of its operator, precluded equal access").

[2] The Court takes judicial notice of the offered exhibits to the extent they are relied upon in this Order. *See* Fed. R. Evid. 201(d).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14/15**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7266 PSG (PLAx) | Date | January 18, 2011 |
|---|---|---|---|
| Title | Stephanie Wolff v. Hyatt Corporation, *et al.* | | |

are located. *See SRJN*, Ex. I. The computer-generated map shows neither the owner of the different properties, nor the properties' actual boundaries. *See RJN*, Ex. A. Similarly, while the property records do suggest that the garage and Hotel are separately owned, they too fail to show the property boundaries, which would enable the Court to determine exactly where the alleged violations occurred. *See, e.g.*, *Compl.* ¶ 38 (alleging that the walkway between the garage and Hotel was not accessible). Finally, Plaintiff correctly points out that the very webpage that Parking Lot Defendants took the Assessor Map from includes a warning about the reliability of the data on the map: "Assessor Maps are produced for property assessment purposes, and are NOT surveys. No warranties, expressed or implied, are provided for the data therein, its use, or its interpretation." *See* http://maps.assessor.lacounty.gov/mapping/viewAssessorMap PDF.asp?val+43319-NDX (last accessed January 10, 2011). The map does not purport to show accurate boundary lines—which would identify the location of the allegedly deficient walkway—and the Court cannot determine that Plaintiff's claim against the Parking Lot Defendants is therefore insufficiently pleaded.

In addition, Plaintiff not only pleads ownership, but also joint operation of the non-compliant areas in question. As used in the ADA, "operate" means to "put or keep in operation, to control or direct the functioning of, or to conduct the affairs; manage" the relevant area. *See Lentini v. Cal. Ctr. For the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2007). In the Complaint, Plaintiff does assert the conclusory allegation that "[o]n information and belief," the walkways are "owned, operated, maintained, managed, and/or leased" by all the Defendants, *see Compl.* ¶¶ 8-9, as well as the non-conclusory allegation that the common design of the garage and Hotel indicate a "common source of ownership or control," *see id.* ¶ 30. Thus, Plaintiff has adequately alleged the "ownership" or "operate" aspect of the claims in the Complaint, which is the only ground on which the Parking Lot Defendants currently seek dismissal.

IV.   Conclusion

Based on the foregoing, the Court DENIES the Parking Lot Defendants' Motion to Dismiss.

   **IT IS SO ORDERED.**